UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------------X
KATHY BROOKS,                          :    CIVIL ACTION NO.:
                                       :
           Plaintiff,                  :    3:11-cv-00731 (    )
                                       :
v.                                     :
                                       :
BATESVILLE CASKET COMPANY, INC.        :
                                       :
           Defendant.                  :    May 4, 2011
                                       :
-------------------------------------------------------------X
```

## COMPLAINT

### I.   INTRODUCTION

1.   The plaintiff, Kathy Brooks, brings this action to redress damages suffered as a result of the discriminatory harassment, retaliation and termination endured by her at the defendant company, in violation of the federal and state laws that prohibit harassment and discrimination on the basis of gender.

### II.  JURISDICTION

2.   Jurisdiction is conferred on this Court by 42 U.S.C. §2000 et seq. and 28 U.S.C. §1331.  Plaintiff also requests this Court to exercise supplemental jurisdiction over her state law claim pursuant to 28 U.S.C. §1367.

### III. VENUE

3.   Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper within this district because the plaintiff resides in Connecticut, defendant does business in Connecticut and a substantial part of the conduct underlying plaintiff's claims occurred in Connecticut.

**IV.     PARTIES**

4. The plaintiff, Kathy Brooks, is a resident of Guilford, Connecticut.

5. The defendant, Batesville Casket Co., Inc. (hereinafter, "Batesville") is a company which does business in Connecticut.

6. The defendant employs more than 15 employees and is an employer within the meaning of Title VII (42 U.S.C. §2000 et seq., as amended by the Civil Rights Act of 1991) and the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. §46a-60).

**V.     EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS**

7. The plaintiff was given notice of her termination on January 6, 2010. Less than 180 days later, on June 28, 2010, she filed a discrimination complaint with the Connecticut Commission on Human Rights & Opportunities ("CHRO") alleging a pattern of harassment and discrimination that culminated in her termination on January 6, 2010.

8. After waiting 210 days, the plaintiff requested a Right to Sue Letter from the CHRO. The CHRO issued a Right to Sue Letter, dated February 9, 2011.

9. The plaintiff has filed her discrimination complaint within 90 days of her receipt of the Right to Sue letter.

**VI.     FACTS**

10. On or about January 2, 2003, the plaintiff began working for Respondent as a Sales Representative, selling caskets and cremation urns to funeral homes in Connecticut and elsewhere.

11. From January 2003 until November 2006, as one of the few female employees in the sales function, the plaintiff regularly exceeded sales goals and was consistently among the highest achievers of the approximately 150 Sales Representatives.

12. Plaintiff had been recognized as Sales Representative of the Year in the New York region and had achieved the President's Circle recognition for three consecutive years.

13. On or about November 2006, the plaintiff was promoted to a position as a Key Account Manager.

14. As Key Account Manager, the plaintiff delivered significant sales growth to defendant and she was successful at delivering customers who for years had pledged to never again work with defendant as a result of previous negative experiences with defendant's male sales employees.

15. The plaintiff always represented the company with the utmost dedication and professionalism which resulted in loyal and enthusiastic customers for defendant.

16. On or about January 2008, Dave Bowers became the Regional Director for the region where the plaintiff worked.

17. On or about August 2008, Bowers promoted his friend Frank Connelly into a Key Account Manager position in a region that overlapped with plaintiff's assigned region.

18. As set forth in paragraphs 19 through 40 below, between August 2008 and continuing until her termination on January 6, 2010, Bowers, Connelly and other of defendant's male managers engaged in a pattern of harassment and discrimination against the plaintiff because of her gender.

19. Immediately after Bowers promoted his friend to Key Account Manager, the plaintiff was treated different from Connelly in that she, and her customers, were excluded from game tickets, golf outings and other events which could have helped her grow sales.

20. Bowers almost never traveled with the plaintiff to visit an account and he purposefully avoided those of plaintiff's customers who he knew would praise her efforts. Yet, Bowers took great strides to support Connelly's sales efforts, including traveling with him

constantly.

21. Because of his almost daily contact with Connelly, Bowers favored him with sales advice and support in a manner he never did with plaintiff despite her complaints to defendant's ineffectual HR Department about her exclusion from the support afforded to her male counterparts.

22. Bowers also witnessed, laughed at and failed to discourage Connelly's demeaning and derogatory comments about the plaintiff. With Bowers listening approvingly, Connelly has referred to the plaintiff as a **"cunt"** and the **"girlfriend"** of another Key Account Manager.

23. With Bowers listening, Connelly has commented upon plaintiff's appearance (e.g. **"fucking prom dress"**) and has continually commented on her performance in a manner that is derogatory and discriminatory (e.g. **"Kathy has no idea what the fuck she is doing."**).

24. By allowing Connelly to behave in this manner, Bowers purposefully influenced the attitude of the male Sales Representatives in her region and created an environment that welcomed hostility against the lone female sales employee in the region.

25. The plaintiff complained about Connelly's behavior to her direct supervisor, Dave Adams, and a Human Resources manager, Diane Kinker, but nothing was done about it.

26. Shortly after the plaintiff engaged in exhaustive efforts to win the business of two funeral homes for defendant, Bowers lied to and coerced the principals of those two homes in order to steal those accounts for his friend Connelly.

27. After Bowers maneuvered to take these accounts from the plaintiff, the plaintiff made a complaint about Bowers' and Connelly's behavior regarding these accounts to defendant's Human Resources Department, but again nothing was done about it.

28. Throughout the time the plaintiff was working with Bowers, he often intimidated her by reminding her of his close relationships with senior managers at defendant, including the President, Joe Ravers.

29. On or about October 2009, despite the plaintiff's complaints to defendant about Bowers, she was selected to report directly to a Regional Director – Dave Bowers. (Previously, plaintiff and the other Key Account Managers reported to the Vice President of National and Key Accounts, Dave Adams.) Plaintiff was the lone woman among nine Key Account Managers.

30. Within days of being made her direct supervisor, Bowers became hyper-critical and abusive. First, he took it upon himself to add hand-written criticisms to plaintiff's overall favorable performance review even though he had been her supervisor for only two weeks. Within three weeks of becoming her supervisor he put a critical letter in her personnel file. Despite the fact that some of her male key account colleagues had been granted flexibility in their use of defendant's call management system, Bowers was immediately critical of plaintiff on this subject and falsely accused her of insubordination.

31. Plaintiff alone was criticized for alleged misuse of the call management system even though male sales representatives Drew Hachey and John Perdichizzi had abused the system by making entries which included references to plaintiff's private health situation and her pending divorce. Hachey and Perdichizzi also included inappropriate descriptions of customer communications. Hachey and Perdichizzi were not criticized by Bowers for their abuse of the call management system.

32. During the short time he served as plaintiff's supervisor in November and December 2009, Bowers spoke to plaintiff in an abusive tone, purposefully delayed providing her with contracts

in a manner that jeopardized her deals and continued to undermine her relationships with male sales representatives by failing to support her in handling her accounts. (Following plaintiff's termination, Dave Bowers swiftly approved several contractual agreements for the male employee who replaced plaintiff on those transactions.)

33. On or about December 4, 2009, Bowers sent an e-mail which was copied to one of defendant's Vice Presidents in which he falsely accused plaintiff of missing a meeting but showing up on time for the "cocktail hour."

34. On or about December 4 and 7, 2009, plaintiff complained that Bowers and Connelly were harassing her because of her gender and asked defendant to investigate.

35. In December 2009, shortly after he learned of the plaintiff's complaint about him, Bowers helped to encourage a customer complaint against plaintiff in retaliation for her complaint against him.

36. In December 2009, Bowers retaliated against plaintiff by conducting a sham "investigation" of the customer complaint against her. Bowers' investigation did not afford plaintiff an opportunity to hear any details of the complaint against her or give her any meaningful opportunity to respond.

37. The customer who allegedly complained about plaintiff was known to be someone with low credibility and someone who often attempted to take advantage of the company (i.e. demanding free tickets, trips and expensive dinners). Moreover, male employees who were the subject of far more serious complaints (i.e. drunkenness or frightening and erratic behavior) were not subjected to this sort of investigation and, eventually, termination.

38. On or about mid-December 2009, after plaintiff made a complaint against Bowers, defendant ordered her to report to another of Bowers' friends, Steve Gadaletta. Gadaletta retaliated against plaintiff for reporting Bowers' harassment and discrimination when, upon first meeting plaintiff, he questioned her integrity and work ethic and thereafter spoke to her in condescending and mocking tones, at times laughing at her in a demeaning manner.

39. On or about late-December 2009, when plaintiff was on vacation, Gadaletta called and e-mailed her with demands that required an immediate response in an obvious and successful effort to interrupt her vacation.

40. On or about January 6, 2010, Gadaletta informed plaintiff that her employment was terminated. Gadaletta explained that defendant terminated her on the basis of the sham investigation conducted by Bowers and because she "refused" to use defendant's call management system.

**VII.   COUNT ONE:  Harassment in violation of 42 U.S.C. §2000e et seq.**

41. During the course of her employment with defendant, the plaintiff was subjected to a pattern of harassing remarks and behavior that affected the terms and conditions of her employment in that it was sufficiently pervasive or severe to create a hostile work environment.

42. The plaintiff's gender was a factor that caused defendant to engage in a pattern of discriminatory and harassing behavior against the plaintiff.

43. The discriminatory and harassing behavior was unwelcome and the plaintiff informed defendant that the behavior was affecting the terms and conditions of her work.

44. As a result of the defendant's conduct, the plaintiff has suffered past and will suffer future financial and emotional distress.

**VIII.   COUNT TWO:  Harassment in violation of Conn. Gen. Stat. §46a-60**

45.     Paragraphs 1 through 40 are hereby reincorporated in this Second Count as if fully plead herein.

46.     During the course of her employment with defendant, the plaintiff was subjected to a pattern of harassing remarks and behavior that affected the terms and conditions of her employment in that it was sufficiently pervasive or severe to create a hostile work environment.

47.     The plaintiff's gender was a factor that caused defendant to engage in a pattern of discriminatory and harassing behavior against the plaintiff.

48.     The discriminatory and harassing behavior was unwelcome and the plaintiff informed defendant that the behavior was affecting the terms and conditions of her work.

49.     As a result of the defendant's conduct, the plaintiff has suffered past and will suffer future financial and emotional distress.

**IX.    COUNT THREE:  Gender Discrimination in violation of 42 U.S.C. §2000e et seq.**

50.     Paragraphs 1 through 40 are hereby reincorporated in this Third Count as if fully plead herein.

51.     Plaintiff's gender played a role in defendant's decision to terminate her employment, in violation of Title VII, 42 U.S.C. §2000e et seq.

52.     As a result of defendant's conduct, the plaintiff has suffered past and will suffer future financial and emotional distress.

**X.     COUNT FOUR:  Gender Discrimination in violation of Conn. Gen. Stat. §46a-60**

53.     Paragraphs 1 through 40 are hereby reincorporated in this Fourth Count as if fully plead herein.

54. Plaintiff's gender played a role in defendant's decision to terminate her employment, in violation of Conn. Gen. Stat. §46-60(a)(1).

55. As a result of defendant's conduct, the plaintiff has suffered past and will suffer future financial and emotional distress.

**XI.    COUNT FIVE: Retaliation in violation of 42 U.S.C. §2000e et seq.**

56. Paragraphs 1 through 40 are hereby reincorporated in this Fifth Count as if fully plead herein.

57. Defendant violated 42 U.S.C. §2000e-3(a) when it retaliated against plaintiff after she complained about discrimination and harassment.

**XII.   COUNT SIX: Retaliation in violation of Conn. Gen. Stat. §46a-60**

59. Paragraphs 1 through 40 are hereby reincorporated in this Sixth Count as if fully plead herein.

60. Plaintiff violated Conn. Gen. Stat. §46a-60(a)(4) when it retaliated against plaintiff after she complained about discrimination and harassment.

**XIII.  PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court take jurisdiction over her case and grant judgment against the defendant. Plaintiff prays that the following relief be ordered:

a.  a declaratory judgment that defendant violated 42 U.S.C. §2000e et seq. and Conn. Gen. Stat. §46a-60.

b.  that the plaintiff be awarded the economic losses that she has suffered to date, including lost back pay and lost benefits;

c.     that the plaintiff be reinstated to her job or to a similar job with full benefits and seniority or, in the alternative, that the Court order the defendant to pay plaintiff front pay and compensate her the value of lost benefits;

d.     that the court award both pre-judgment and post judgment interest, pursuant to Conn. Gen. Stat. §37a-3a;

e.     that defendant be required to pay reasonable attorney fees and costs for this action;

f.     that the defendant compensate plaintiff for the emotional harm damages that she has suffered as a result of defendant's conduct; and

g.     that plaintiff be granted such other relief as the Court deems appropriate.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF,**

By:    */s/ Stephen J. Fitzgerald*
        Stephen J. Fitzgerald
        *Fed. Bar No.: ct 22939*
        GARRISON, LEVIN-EPSTEIN, CHIMES,
            RICHARDSON & FITZGERALD, P.C.
        405 Orange Street
        New Haven, CT 06511
        Tel.:   (203) 777-4425
        Fax:   (203) 776-3965
        E-mail: sfitzgerald@garrisonlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
| KATHY BROOKS, | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BATESVILLE CASKET COMPANY, INC. | : | |
| | : | |
| Defendant. | : | May 4, 2011 |
| | : | |
---------------------------------------------------------------X

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this lawsuit.

        RESPECTFULLY SUBMITTED,
        THE PLAINTIFF,

By: */s/ Stephen J. Fitzgerald*
    Stephen J. Fitzgerald
    *Fed. Bar No.: ct 22939*
    GARRISON, LEVIN-EPSTEIN, CHIMES,
        RICHARDSON & FITZGERALD, P.C.
    405 Orange Street
    New Haven, CT  06511
    Tel.:   (203) 777-4425
    Fax:   (203) 776-3965
    E-mail:  sfitzgerald@garrisonlaw.com