UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KATHY BROOKS,<br>    Plaintiff,<br>v.<br><br>BATESVILLE CASKET CO., INC.,<br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:11-CV-731(JCH)<br><br><br>AUGUST 30, 2011 |

**RULING RE: DEFENDANT'S MOTION TO DISMISS OR TRANSFER [Doc. No. 12] &
PLAINTIFF'S FIRST AND SECOND MOTIONS FOR LEAVE TO AMEND THE
COMPLAINT [Docs. No. 17, 24]**

**I.     INTRODUCTION**

Plaintiff Kathy Brooks brings this suit against defendant, Batesville Casket Co., Inc. ("Batesville Casket"). Brooks is a resident of Connecticut. Batesville Casket Co. is an Indiana corporation with a principal place of business in Indiana. Mem. in Supp. of Mot. to Dismiss or Transfer (Doc. No. 13), Ex. A, ¶ 3 ("Kinker Affidavit"). In her Complaint, Brooks asserts six causes of action against Batesville Casket for harassment, gender discrimination, and retaliation during her employment with Batesville Casket, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. Compl., ¶¶ 41-60.

Batesville Casket has moved to dismiss the suit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or, alternatively, to transfer venue to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). Batesville Casket argues that forum selection clauses in two employment agreements signed by Brooks preclude her from litigating this case in Connecticut. Batesville Casket further contends that Indiana is a more

convenient and just forum in which to adjudicate this dispute. In opposition, Brooks argues that the forum selection clauses are unenforceable because the forum named in the clauses is "so gravely difficult and inconvenient" that she "will for all practical purposes be deprived of [her] day in court." Mem. in Opp. (Doc. No. 18), at 6 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)).

For the reasons that follow, the court concludes that the forum selection clauses contained in the employment agreements are enforceable. Rather than dismiss the case, the court transfers the case to the Southern District of Indiana pursuant to 28 U.S.C. § 1406.

## II.  STANDARD OF REVIEW

Batesville Casket seeks dismissal based on improper venue under Fed. R. Civ. P. 12(b)(3), but Batesville Casket also acknowledges in its moving papers that the Second Circuit has "refused to pigeon-hole" into a particular subsection of Rule 12(b) any motion to dismiss based on a binding forum selection clause. See Mot. to Dismiss (Doc. No. 12), at 1, n.1 (quoting Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006)). In deciding whether to enforce a forum selection clause, the Second Circuit requires that, "where one party has shown an apparently governing forum selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment." Asoma Corp., 467 F.3d at 822; see also MAK Marketing, Inc. v. Kalapos, 620 F.Supp.2d 295, 298 (D. Conn. 2009).

## III. FACTUAL BACKGROUND

Batesville Casket hired Brooks as a Sales Representative covering the New York metropolitan area starting January 5, 2004. Kinker Affidavit, ¶ 11. On January 14, 2004, Brooks signed her initial employment agreement with Batesville Casket. Mem. in Supp. (Doc. No. 13), Ex. A-5 ("First Employment Agreement"). In relevant part, the First Employment Agreement provided in a section entitled "Choice of Forum:"

> The Company is based in Indiana, and the Representative [Brooks] understands and acknowledges the Company's desire and need to defend any litigation against it in Indiana. Accordingly, the parties agree that any claim of any type brought by the Representative against the Company or any of its employees or agents <u>must</u> be maintained only in a court sitting in Marion County, Indiana, or Ripley Count, Indiana, or, if a federal court, the Southern District of Indiana, Indianapolis Division.

First Employment Agreement, ¶ 20 (emphasis added).

On October 12, 2006, Brooks was offered a promotion from Sales Representative to Key Account Sales Representative, effective November 1, 2006. Kinker Affidavit, ¶ 17; Mem. in Supp., Ex. A-6. As a Key Account Sales Representative, Brooks was responsible for the "Metro/Northeast Regions." Kinker Affidavit, ¶¶ 17-18. On October 30, 2006, Brooks signed a second employment agreement with Batesville Casket in connection with her promotion to the position of Key Account Manager. Mem. in Supp. (Doc. No. 13), Ex. A-9 ("Second Employment Agreement"). In relevant part, the Second Employment Agreement provided:

> Employee acknowledges that the Companies are primarily based in Indiana, and Employee understands and acknowledges the Company's desire and need to defend any litigation against it in Indiana. Accordingly, the Parties agree that any claim of any type brought by Employee against the Company or any of its employees or agents <u>must</u> be maintained only in a court sitting in Marion County, Indiana, or Ripley County, Indiana, or, if a federal court, the Southern District of Indiana, Indianapolis Division.

Second Employment Agreement, ¶ 37 (emphasis added).

While a Key Account Sales Representative, Brooks was assigned a sales territory covering New York, Connecticut, Massachusetts, Rhode Island, and Maine. Brooks Affidavit, Doc. No. 18, Ex. 1, ¶ 9.  Brooks alleges that from August 2008 through her termination by Batesville Casket on January 6, 2010, male employees from Batesville Casket engaged in a pattern of harassment and discrimination against Brooks because of her gender.  Compl., ¶ 18.

Brooks traveled to Indiana on multiple occasions, including interviews for her promotion. Kinker Affidavit, ¶¶ 22, 24.  Batesville Casket avers that Brooks traveled to Indiana regularly for training sessions, sales meetings, and client meetings.  Kinker Affidavit, ¶ 24.  However, most of the individuals alleged by Brooks to have engaged in discriminatory conduct lived and worked in the New York Metropolitan Area.  Brooks Affidavit, ¶ 12.

## IV.    DISCUSSION

Batesville Casket argues that the District of Connecticut is an improper venue for the resolution of Brooks's claims.  Batesville Casket bases this argument exclusively on the existence of forum selection clauses in the two employment agreements signed by Brooks.  Because the forum selection clause in the Second Employment Agreement covered the entire time frame of the alleged discriminatory conduct, the court focuses on whether that clause is enforceable.

### A.    Presumptive Enforceability of Forum Selection Clauses

Evaluating a claim based on a forum selection clause requires a four-part analysis, as set forth by the Second Circuit Court of Appeals in Phillips v. Audio Active,

4

Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). The first three stages of the analysis determine whether the forum selection clause is presumptively enforceable:

> [1] The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.
>
> [2] The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are <u>required</u> to bring any dispute to the designated forum or simply <u>permitted</u> to do so.
>
> [3] Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.

Id. at 383 (internal citations omitted).

If the forum selection clause was reasonably communicated to Brooks, if the forum selection clause is mandatory, and if the forum selection clause applies to the parties in this case, then the clause is presumptively enforceable. Id. Here, the forum selection clause was presented in plain English in a relatively short employment agreement signed by Brooks. Brooks does not contend that the clause was not reasonably communicated to her, so the first factor of the analysis has been met. The forum selection clause is mandatory; it dictates that Brooks "must" bring any litigation against Batesville Casket in Indiana, so the second factor of the analysis has been met. First Employment Agreement, ¶ 20; Second Employment Agreement, ¶ 37. Finally, the forum selection clause directly pertains to Brooks and Batesville Casket, the two parties to this lawsuit. Brooks does not contend otherwise, and the third factor of the analysis has been met. Therefore, the forum selection clause is presumptively enforceable, and the court proceeds to the fourth part of the test.

B.  <u>Whether the Plaintiff Has Successfully Rebutted the Presumption of Enforceability</u>

The fourth step in the test "is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" <u>Phillips</u>, 494 F.3d at 383-84 (quoting <u>M/S Bremen</u>, 407 U.S. at 15.[1] Determining "whether an otherwise mandatory and applicable forum clause is enforceable" should be decided under federal law, rather than state law, "because enforcement of forum clauses is an essentially procedural issue." <u>Id.</u> at 384. Under prevailing federal law, a forum selection clause will be enforceable unless:

(1) its incorporation was the result of fraud or overreaching;
(2) the law to be applied in the selected forum is fundamentally unfair;
(3) enforcement contravenes a strong public policy of the forum state; or
(4) trial in the selected forum will be so difficult and inconvenient that the plaintiffs effectively will be deprived of his day in court.

<u>Phillips</u>, 494 F.3d at 392; <u>see</u> <u>also</u> <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1363 (2d Cir. 1993).

1. Whether the Forum Selection Clause Is Unenforceable Because It Was the Product of Overreaching

Brooks suggests that the forum selection clause was the result of overreaching by Batesville Casket. Brooks states that the forum selection clauses within the two employment agreements "were not the product of negotiations between Batesville and myself. I had to sign those agreements if I wanted to work for Batesville and so I signed them when they were given to me." Brooks Affidavit, ¶ 17. The Supreme Court in <u>M/S</u>

---

[1] <u>M/S Bremen</u> established a federal standard relating to the enforcement of forum clauses in international contracts heard in admiralty. <u>M/S Bremen</u>, 407 U.S. at 15. <u>Bense v. Interstate Battery Sys. of Am., Inc.</u>, 683 F.2d 718, 721 (2d Cir. 1982), extended the <u>M/S Bremen</u> standard to federal law claims between domestic parties in a non-admiralty context.

6

Bremen held that there was no evidence of "overweening bargaining power" between the parties when the forum selection clause in that case was adopted. M/S Bremen, 407 U.S. at 12-13 & n.14. In so holding, the Court emphasized that the sophisticated commercial parties to the international shipping contract had negotiated a number of the contract's provisions. In this regard, Brooks differs from the situation in M/S Bremen. However, the mere absence of negotiation over the terms of a forum selection clause does not render it unenforceable.

Brooks's situation is comparable to that of the defendant in United Rentals, Inc. v. Pruett, 296 F.Supp.2d 220 (D. Conn. 2003). In Pruett, the defendant complained that he had not had an opportunity to negotiate the terms of his employment agreement with his employer. Id. at 226. The court concluded:

> [G]iven the strong presumption of validity of forum selection clauses under Supreme Court and Second Circuit precedent, even in adhesion contracts, it is inappropriate to establish a per se rule against enforcement of forum selection clauses in employment agreements, without a clear demonstration of unfair advantage.

Id. at 228. The court in Pruett concluded that the plaintiff had not taken unfair advantage of the defendant through the use of a disparity in bargaining power. Id. at 227. Specifically, the plaintiff had provided the employment contract to the defendant around the time of hiring, rather than months after the employee had already accepted a position. Id. In the instant case, the First Forum Selection Clause was provided to Brooks only nine days after starting her position with Batesville Casket, and the Second Forum Selection Clause was contained in an employment agreement that Brooks signed before her promotion became effective. See Part II, supra. The forum selection clauses in the two employment agreements were substantially the same. Even if

7

Batesville Casket had presented Brooks with a more onerous forum selection provision "subsequent to initial employment," it is likely that this would be "neither fraudulent nor overreaching." See also International Business Machines Corp. v. Martson, 37 F.Supp.2d 613, 617 (S.D.N.Y. 1999).

Similarly, in United Rentals, Inc. v. Faulk, the district court rejected a former employee's argument that a forum selection clause was overreaching because he felt he had "no other choice but to sign the agreement." United Rentals, Inc. v. Faulk, No. 3:10CV1398(JBA), 2011 WL 2550619, *3 (D. Conn. June 21, 2011). The court observed that the employee was offered money in exchange for signing the severance agreement consenting to personal jurisdiction in Connecticut, was given 45 days to review the agreement before signing, and was given seven days thereafter to rescind it. Id. Here, Brooks provided consent to the forum selection clause as a condition of an initial position with Batesville Casket and then as a condition of a promotion. Brooks has not presented any evidence that she was provided inadequate time to review the documents or to consult an attorney.

This situation differs markedly from that in Jelcich v. Warner Bros., Inc., No. 95CIV10016(LLS), 1996 WL 209973, *2 (S.D.N.Y. Apr. 30, 1996). In Jelcich, the district court refused to enforce a forum selection clause where the plaintiff had already worked for the employer for eight years, was threatened that, if she did not sign the contract "as is," she would receive no salary increase for four years, and was derided by her superior for seeking better terms. Id. at *1-*2. Brooks has not presented evidence that she was pressured or threatened in any way. In contrast to Jelcich, Brooks has not

demonstrated that the forum selection clauses were procured by overreaching that would be sufficient to overcome the presumption that the clauses are enforceable.

        2.     Whether Enforcement of the Forum Selection Clause Would Be Unreasonable

Returning to the four potential rationales for declining to enforce a presumptively valid forum selection clause, Brooks does not contend that the law to be applied in Indiana would be fundamentally unfair, or that enforcement of the forum selection clause would contravene a strong public policy of the forum state. Brooks's final argument is that enforcing the forum selection clauses in this case would be unreasonable. Brooks contends that pursuing her claims in Indiana would require her to "press her . . . claims in a court that is approximately 800 miles from all of the witnesses and location of events that give rise to her claims." Mem. in Opp. (Doc. No. 18) at 6-7. Brooks further asserts that she is unlikely to be able to afford the retention of Indiana counsel, nor will she be able to afford transportation to Indiana and lodging in Indiana for deposition and trial. Id. at 7. These costs "may" cause her "to have to abandon the action." Brooks Affidavit, ¶ 18. Finally, Brooks argues that "it is highly unlikely that any of the critically important non-party witnesses will agree to travel 800 miles to Indiana." Id. at 8.

Establishing that the application of a forum selection clause would be unreasonable is a "heavy burden." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 32 (2d Cir. 1997). "[I]n order to escape the contractual clause," Brooks would need to show "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Id. at 32 (citing M/S Bremen, 407 U.S. at 18).

9

In Phillips, the Second Circuit Court of Appeals considered similar arguments regarding the enforceability of a forum selection clause. 494 F.3d at 392-93. The Court of Appeals held that a forum selection clause required the plaintiff, a recording artist, to litigate his federal Copyright Act claims in England, rather than the United States. The plaintiff in Phillips argued that none of his witnesses, nor any of the parties to the action, were located in England. Id. The plaintiff further observed that the defendants never offered evidence that any relevant documents or witnesses were located in England. Id. at 393. The Court of Appeals held that these obstacles, while significant, would not deprive the plaintiff of his day in court. The court reasoned:

> [Plaintiff's] averments suggest that litigation in England may be more costly or difficult, but not that it is impossible. He has not alleged any circumstances – whether affecting him personally or a component of his case or prevailing in England generally – that would prevent him from bringing suit in England. . . . In addition, [the plaintiff] has not declared any of his claimed hardships are other than the obvious concomitants of litigation abroad, or were not foreseeable when he agreed to litigate in England.

Id. (citations omitted). The Second Circuit's rationale in Phillips applies here. Brooks suggests that litigation in Indiana will be more expensive. However, the distance between Connecticut and Indiana is not so significant that pursuing her claims will be impossible, especially in light of the Second Circuit's decision in Phillips that a plaintiff could feasibly pursue his claims in England rather than the United States.

Brooks argues that "it is highly unlikely that any of the critically important non-party witnesses will agree to travel 800 miles to Indiana." Mem. in Opp. at 8. Indeed, Brooks will not be able to force any of these non-party witnesses to testify at trial in Indiana. Rule 45(b)(2) of the Federal Rules of Civil Procedure prohibits service of a subpoena on any witness located more than 100 miles outside of the district specified

10

for a "deposition, hearing, trial, production, or inspection." However, Brooks could depose non-party witnesses during discovery and introduce those depositions at trial. See Fed. R. Civ. P. 32(a)(4) ("A party may use for any purpose the deposition of a witnesses, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of . . . trial . . . unless it appears that the witness's absence was procured by the party offering the deposition."); Fed. R. Evid. 804(a)(5) (a witness is unavailable for purposes of the hearsay exception where the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means). Thus, the enforcement of the forum selection clauses would not unduly hamper Brooks's ability to prove her claims.

Finally, when Brooks signed the employment agreements containing the forum selection clauses, she was likely aware of the potential costs of pursuing claims against Batesville Casket in Indiana. Although the court is mindful of the increased burden Brooks would face in bringing this action in Indiana, the court does not find pursuing her claims in that forum would be so difficult and inconvenient that she would effectively be deprived of her day in court.

    C.    <u>Whether to Transfer Rather Than Dismiss the Action</u>

When venue is improper, the court may transfer the case to any district in which it could have been brought. See 28 U.S.C. § 1406(a); <u>Johnsen, Fretty & Co., LLC v. Lands South, LLC</u>, 526 F.Supp.2d 307, 310 (D. Conn. 2007). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir.1993). The operative question for the court when exercising this discretion is whether transfer of the case would be "in the interest

11

of justice." 28 U.S.C. § 1406(a). Whereas Brooks appears to have alleged several serious claims that deserve to be adjudicated on the merits, the court finds that it would serve the interests of justice to transfer the case to the United States District Court of the Southern District of Indiana, Indianapolis Division.

  D. <u>Brooks's Motion to Amend her Complaint</u>

On June 28, 2011, Brooks sought leave to file an Amended Complaint. <u>See</u> First Mot. for Leave to File Am. Compl. (Doc. No. 17). Specifically, Brooks seeks to add factual allegations and a defamation cause of action that arise out an incident that occurred on May 26, 2011, several weeks after the original Complaint was filed. <u>Id.</u> On August 15, 2011, Brooks filed a Second Motion for Leave to File an Amended Complaint, this time providing additional factual detail to the proposed count for defamation. <u>See</u> Second Mot. for Leave to File Am. Compl. (Doc. No. 24).

A party may amend its pleading with leave from the court, and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." <u>AEP Energy Services Gas Holding v. Bank of America</u>, 626 F.3d 699, 725 (2d Cir. 2010) (quoting <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993)).

Batesville Casket has not opposed either motion for leave to amend. Moreover, the court finds that the plaintiff has no bad faith or dilatory motive in seeking the

12

proposed amendments. Brooks' First Motion for Leave to File an Amended Complaint was filed within weeks of the alleged defamatory statements that Brooks seeks to add to her Complaint. The court therefore grants the unopposed Second Motion for Leave to File an Amended Complaint and terminates the First Motion for Leave to File an Amended Complaint as moot.

## V. CONCLUSION

The court **grants** Brooks's Second Motion for Leave to Amend the Complaint [**Doc. No. 24**] and **terminates as moot** Brooks's First Motion for Leave to Amend the Complaint [**Doc. No. 17**].

The court concludes that venue in the District of Connecticut is improper. Rather than dismiss the action, the court exercises its discretion under 28 U.S.C. § 1406(a) to transfer the action to the location specified by the forum selection clause contained in the Second Employment Agreement between Brooks and Batesville Casket. The Clerk of the Court is therefore directed to transfer the case to the Southern District of Indiana, Indianapolis Division. Accordingly, Batesville Casket's Motion to Dismiss [**Doc. No. 12**] is **terminated as moot** and its Motion to Transfer [**Doc. No. 12**] is **granted**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 30th day of August, 2011.

       /s/ Janet C. Hall  
Janet C. Hall  
United States District Judge